## UNITES STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Joseph Goode** )<br>)<br>**Plaintiff** )<br>)<br>v. )<br>)<br>**Morgan Truck Body LLC d/b/a/** )<br>**Morgan Corporation** )<br>)<br>**Defendant** )<br>) | **Civil Action No.:** |

## COMPLAINT AND JURY DEMAND

Plaintiff, Joseph Goode, brings this action for strict product liability, breach of warranties and negligence against Defendant Morgan Truck Body LLC d/b/a Morgan Corporation and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. s. 1332.  The parties are citizens of different states and the amount in controversy exceeds $75,000.

2. This Court has personal jurisdiction over the Defendant in this action because Defendant's tortious conduct caused Plaintiff's injury in Massachusetts, and Defendant regularly does business in the Commonwealth and/or engages in a persistent course of conduct, and/or derives substantial revenue from goods used and/or services rendered in the Commonwealth.  The exercise of specific jurisdiction over the Defendant is proper under the Due Process Clause of the United States Constitution because it has the requisite

1

minimum contacts with Massachusetts Plaintiff's cause of action arose out of and have a substantial connection to those contacts.

3. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this lawsuit occurred in this judicial district.

## THE PARTIES

4. Plaintiff Joseph Goode (hereinafter "Plaintiff" and/or "Mr. Goode"), is an adult individual who at all relevant times resided in the Commonwealth of Massachusetts and currently resides in Medford, Middlesex County, Massachusetts.

5. Defendant, Morgan Truck Body, LLC d/b/a Morgan Corporation (hereinafter "Morgan"), is a Delaware limited liability company with its principal place of business in Morgantown, Berks County, Pennsylvania.

## FACTS

6. Morgan is in the business of designing, manufacturing, marketing, selling and servicing trucks and truck bodies across the United States and internationally.

7. Morgan designs and manufactures truck bodies that it then installs onto truck chasses it has purchased from other companies. Morgan then sells the completed truck with the Morgan designed and installed body. Morgan also sells its truck bodies directly to customers and through authorized dealers and distributors located throughout the United States.

8. Morgan manufactures its truck bodies at three locations in Pennsylvania and at single locations in Oregon, Colorado, Arizona, Texas, Wisconsin, Georgia, and Florida.

9. On information and belief, Morgan sells its trucks and truck bodies in all fifty States.

10. Morgan sells its truck bodies and trucks to purchasers in Massachusetts and all other States through direct sales to end users and through a large distribution network involving dealers

and distributors in all States that are authorized to sell Morgan trucks and truck bodies. Middlesex Truck & Coach located in Boston, Massachusetts is Morgan's authorized Massachusetts distributor for its truck bodies.

11. Morgan's direct customers include Ryder Systems, Inc. (Ryder) and Penske Corporation, two of the largest truck rental companies in the United States. Morgan is Ryder's preferred provider of trucks to its rental locations throughout the United States. Morgan also sells its trucks and truck bodies to Lowes Companies, Inc. and UPS.

12. Ryder operates eight locations in eastern Massachusetts for the rental of Morgan trucks to Massachusetts residents.

13. On information and belief, Morgan sells a substantial number of trucks and truck bodies to Massachusetts purchasers through direct sales to Massachusetts purchasers, including Ryder, and through its Massachusetts based distributor and other distributors in the Northeast. Morgan negotiates the direct sale of trucks and truck bodies to customers located in Massachusetts, delivers trucks to Massachusetts purchasers, and sells truck parts directly to customers in Massachusetts.

14. In or about March 2008, Morgan completed the manufacture of the subject box truck bearing Vehicle Identification Number ("VIN") 1FVACWDT19HAC7549 (hereinafter "the subject truck") in Pennsylvania.

15. The subject truck is an approximately 37-foot-long box truck, with a Gross Vehicle Weight Rating of 26,000 lbs.

16. Drivers are not required to obtain a commercial license to operate trucks of the size and model of the subject truck.

17. On information and belief, Morgan sold the subject truck to Ryder either directly or indirectly to a Ryder Truck Rental in Connecticut.

18. Ryder leased the subject truck to Mr. Messenger, Inc. (Mr. Messenger), a courier, distribution, and delivery business located in Rhode Island.

19. Mr. Messenger is a delivery company that provides daily pickup and delivery of parcels, freight, and cargo to and from locations in Massachusetts, including deliveries to and from Logan International Airport in Boston.

20. On October 30, 2015 Plaintiff Joseph Goode was riding his bicycle on Massachusetts Avenue in Cambridge, heading northwest. Mr. Goode was riding in the center of the designated bicycle lane on the right-hand side of the street and was alert and attentive to the road and traffic.

21. The subject truck, driven by Donald Houde in the course of his employment with Mr. Messenger, was also driving northwest on Massachusetts Avenue and was driving beside Mr. Goode just prior to making a right-hand turn from Massachusetts Avenue onto Windsor Avenue.

22. At the intersection of Massachusetts Avenue and Windsor Avenue, the subject truck made a sudden right-hand turn from Massachusetts Avenue onto Windsor Avenue, forcing a side-impact collision with Mr. Goode and knocking him to the ground.

23. As the truck knocked Mr. Goode to the ground, he was run-over by the rear wheels of the subject truck, crushing his pelvis and mid-section and causing multiple trauma.

24. Mr. Goode suffered severe, debilitating and painful injuries that required hospitalization, multiple surgeries, extensive medical treatment and rehabilitation services, and that will continue to have a substantial negative impact on him throughout his life. The subject

truck was not equipped with truck side guards, and the body-chassis configuration was such that it created a substantial risk of running over bicyclists and pedestrians when turning.

25. Truck side guards are vehicle-based safety devices designed to keep vulnerable road users, such as pedestrians, bicyclists, and motorcyclists, from being run over by a large truck's rear wheels in side-impact collisions.  During a crash with a truck that has high ground clearance, such as the subject truck, vulnerable road users can fall into the exposed space between the front and rear wheels and suffer crushing injuries, such as those suffered by Plaintiff.

26. Side guards are designed to physically cover the exposed space between the front and the rear wheel, shielding vulnerable road users from being swept underneath the truck's rear wheels.

27. Had the subject truck been equipped with truck side-guards, Plaintiff would not have been swept under the rear wheels of the truck and crushed.

28. Additionally, the subject truck was equipped with deficient front fender turn signals. Although Mr. Goode was travelling alongside the subject truck and in the middle of the bicycle lane just prior to the collision, the front fender turn signal was not visible to Mr. Goode because of its placement on the front fender.

29. Had the subject truck been equipped with front fender turn signals visible to cyclists riding alongside the subject truck, Mr. Goode would have been able to take defensive action to avoid the forced collision.

30. As a result of Defendant's misconduct and the product defects and breach of warranties as set forth herein, Plaintiff suffered serious and catastrophic injuries, including a crushed

pelvis, urethral rupture, right pneumothorax, left hemopneumothorax, multiple rib fractures, right L5 transverse process fracture, and left thigh morel lavalle lesion and functional losses, together with pain and suffering, disfigurement, sexual dysfunction, scarring, loss of life's pleasures, past and future loss of earnings and earning capacity, as well as past and future costs and expenses for medical treatment, rehabilitation, attendant care related expenses and other related and anticipated expenditures.  As a result of his injuries and resulting functional losses, Plaintiff has required and likely in the future will require surgeries, hospitalization, and rehabilitation in medical facilities.

31. As a result of the negligence and product defects and breach of warranties described herein, the injuries suffered by Plaintiff are permanent and have caused associated medical and functional complications, losses and disabilities, and economic damages, which will continue in the future.

32. Defendant is liable to Plaintiff for its respective negligence, distribution of a defective product, and breach of warranties.

## COUNT I

## NEGLIGENCE

33. The foregoing paragraphs are incorporated herein by reference as though fully set forth herein.

34. Defendant owed Plaintiff a duty to design, manufacture, produce and sell a product that was not defective and unreasonably dangerous.

35. The magnitude of the harm caused by the defective design and manufacture of the subject truck as described herein was foreseeable and known and/or should have been known by Defendant.

36. Defendant was aware or should have been aware of the consequence of failing to install truck side guards, and that the failure to install truck side guards could cause or enhance a vulnerable road users' injuries in the event of a side-impact collision, such as occurred when the plaintiff was injured.

37. Defendant was aware or should have been aware of the availability of side guards as a safer alternative design.

38. Defendant was aware or should have been aware of how side guards protect pedestrians, bicyclists and others from being crushed by the rear wheels of a truck, such as the subject truck, in the event of a side impact collision with pedestrians and bicyclists, such as the plaintiff.

39. Defendant was aware or should have been aware that the subject truck was designed and manufactured without adequate front fender turn signals, and that the signals installed on the truck were not visible to a cyclist riding alongside the truck in a bicycle lane.

40. At the time of Plaintiff's injury, the subject truck was in use as intended, without any alteration.

41. The conduct of Defendant, acting by and through its agents, servants and employees, constitutes carelessness and negligence, both generally and in the following respects:

   a. Failing to design and manufacture the subject truck with a truck side guard to protect vulnerable road users such as Plaintiff from being run-over by the rear wheels of the truck as a result of a side-impact collision;

   b. Failing to design and manufacture the subject truck with front fender turn signals that would be visible to a cyclist or pedestrian alongside the truck, such as occurred when Plaintiff was riding next to the truck in a designated bicycle lane, which would have provided sufficient warning to Plaintiff to avoid the side-impact collision;

   c. Failing to design and/or intentionally withholding from use in the truck safer reasonable alternative designs as described herein, such as a truck

    side guards or adequately visible front fender turn signals, despite the Defendant's awareness of supplemental and necessary safety systems;

  d. Designing, manufacturing, selling, and/or supplying the subject truck in such a manner and condition that it was unreasonably dangerous and not safe;

  e. Failing to design the subject truck in accordance with the state of the art;

  f. Failing to reasonably and properly test and/or analyze the testing of the subject truck under reasonably foreseeable circumstances;

  g. Failing to adequately warn/instruct operators and users of the subject truck of the foreseeable dangers of the risks posed by the subject truck's defective and unsafe design;

  h. Failing to exercise that degree of care exercised by a reasonably prudent manufacturer or designer of trucks and truck bodies under the circumstances;

  i. Failing to investigate, retain and analyze prior incident and injury information related to the subject truck and similarly designed products;

  j. Failing to account for prior injuries with the subject truck and Defendant's similarly designed products and failing to correct and prevent the same incidents and injuries from occurring;

  k. Designing and releasing for sale the subject truck, and then subsequently failing to take corrective action to rectify the danger associated with the lack of truck side guards and the inadequate front fender turn signals;

  l. Designing, manufacturing and distributing a product, the subject truck, with known hazards, but failing to design and/or equip the truck with sufficient safety features to eliminate the hazards and/or promote the safety of individuals operating the truck and other road users, such as Plaintiff; and

  m. Such other acts or omissions constituting carelessness and as may appear during the course of discovery or that might be adduced at the trial of this matter.

42. Due to the misconduct and negligence of Defendant and the unreasonably dangerous and unsafe design and manufacture of the subject truck as described herein, Defendant

breached the duty it owed to Plaintiff and increased the risk of harm to Plaintiff, which resulted in Plaintiff's severe injuries, damages and losses.

43. Defendant breached its duty to Plaintiff by consciously disregarding a substantial risk that its trucks and truck bodies would significantly injure others, such as plaintiff.

44. Defendant knew, realized, or should have reasonably known or realized that it created an unreasonable risk of causing physical harm to another by the design of the subject truck and failed to exercise reasonable care to prevent such risk from taking effect.

45. As a direct and proximate result of defendant's negligence and carelessness as described above, the plaintiff has suffered severe personal injuries, disfigurement and loss of function and associated losses and damages.

WHEREFORE, Plaintiff claims damages from Defendant in a sum that provides full compensation for all of his injuries and damages, plus interest, costs, and any other relief this Honorable Court deems appropriate.

## COUNT II

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### UNDER M.G.L. 106, § 2-314

46. The foregoing paragraphs are incorporated herein by reference as though fully set forth herein.

47. Defendant, acting by and through its agents, servants and employees, expressly and/or impliedly warranted that the truck was of good and merchantable quality, fit, safe, not defective or unreasonably dangerous, and in proper condition for the ordinary use for which the product was designed and intended to be used.

48. Such warranties were breached in that the subject truck was not of merchantable quality, but rather the truck was unfit and unsafe for the ordinary purposes for which it was intended.

49. The subject truck was not of merchantable quality and was unfit and unsafe for the ordinary purposes for which it was intended and used in the following particulars:

    a. The subject truck was designed, manufactured and distributed without truck side guards, which created a hazard known to Defendants.

    b. The subject truck's front fender turn signals were not visible to cyclists riding next to the truck.

    c. The subject truck did not contain adequate instructions and/or warnings to alert an operator that the truck would fail to protect vulnerable road users in side-impact collisions.

    d. The truck did not contain adequate instructions and/or warnings to alert an operator that the subject truck's front fender turn signal would not be visible to cyclists, or other road users riding alongside the truck.

    e. In the absence of a side guard and/or adequate turn signals, the subject truck was unreasonably dangerous for its foreseeable and intended uses and other road users.

50. As a bicyclist lawfully riding his bicycle in the bicycle lane when he was struck and run over by the subject truck, the plaintiff was a person whom defendant knew or should have known would be affected by its breach of warranties as described above.

51. Due to breach of warranties and the unfit and unreasonably dangerous condition, design, and manufacture of the subject truck, Plaintiff suffered the damages and losses more fully described above.

52. As a direct and proximate result of defendant's breach of warranties as described above, the plaintiff has suffered severe personal injuries, disfigurement and loss of function and associated losses and damages.

WHEREFORE, Plaintiff claims damages from Defendant, and/or Defendant's agents, servants, workmen and/or employees, in a sum that provides full compensation for all of his injuries and damages, plus interest, costs, and any other relief this Honorable Court deems appropriate.

## COUNT III

## STRICT LIABILITY

53. The foregoing paragraphs are incorporated herein by reference as though fully set forth herein.

54. Defendant, acting by and through its agents, servants and employees, designed and manufactured a truck and truck body that was unreasonably dangerous for their intended purposes.

55. The subject truck was unreasonably dangerous and defective for its intended uses in the following particulars:

    a. The subject truck was designed, manufactured and distributed without truck side guards, which created a hazard known to Defendants.

    b. The subject truck's front fender turn signals were not visible to cyclists riding next to the truck.

    c. The subject truck did not contain adequate instructions and/or warnings to alert an operator that the truck would fail to protect vulnerable road users in side-impact collisions.

    d. The truck did not contain adequate instructions and/or warnings to alert an operator that the subject truck's front fender turn

11

      signal would not be visible to cyclists, or other road users riding alongside the truck.

    e. In the absence of a side guard and/or adequate turn signals, the subject truck was unreasonably dangerous for its foreseeable and intended uses and other road users.

56. As a bicyclist lawfully riding his bicycle in the bicycle lane when he was struck and run over by the subject truck, the plaintiff was a person whom defendant knew or should have known would be affected by its failure to design a reasonably safe product as described above.

57. The danger posed by the defective condition of the truck body is unknowable and unacceptable to the average or ordinary consumer and a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions.

58. Due to the unreasonably dangerous design of the subject truck, Plaintiff suffered the damages and losses more fully described above.

59. As a direct and proximate result of defendant's breach of its duty to design and manufacture a reasonable save truck as described above, the plaintiff has suffered severe personal injuries, disfigurement and loss of function and associated losses and damages.

    WHEREFORE, Plaintiff claims damages from Defendant, and/or Defendant's agents, servants, workmen and/or employees, in a sum that provides full compensation for all of his injuries and damages, plus interest, costs, and any other relief this Honorable Court deems appropriate.

## PRAYER FOR RELIEF

    WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:

a. For general and compensatory damages in an amount to be proven at the time of trial;

b. For special damages in an amount to be proven at the time of trial;

c. For pre-judgment and post-judgment interest;

d. For costs of this suit and attorneys' fees; and

e. All other relief that this Court deems necessary, proper, and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Respectfully Submitted,

/s/ Anthony Tarricone
Anthony Tarricone, BBO No. 492480
Elizabeth Tully, BBO No. 685855
KREINDLER & KREINDLER LLP
855 Boylston Street
Boston, MA 02116
T: (617) 424-9100
F: (617) 424-9120
atarricone@kreindler.com
etully@kreindler.com

Date: June 8, 2018